AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original    ☐ Duplicate Original

| LODGED<br>CLERK, U.S. DISTRICT COURT<br>05/03/2021<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY: AP  DEPUTY | UNITED STATES DISTRICT COURT<br>for the<br>Central District of California | FILED<br>CLERK, U.S. DISTRICT COURT<br>5/3/2021<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY: DC  DEPUTY |
|---|---|---|

United States of America,

v.

John Runnels,

Defendant.

Case No. 5:21-mj-00325

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of March 15, 2021 in the county of Riverside in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), and 18 U.S.C. § 924(c)(1)(B)(i) | Possession of 50 grams or More of Methamphetamine with Intent to Distribute) and Possession of a Short-Barreled Rifle in Furtherance of a Drug Trafficking Crime |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/ Pursuant to Fed. R. Crim. P. 4.1
Complainant's signature

HSI Special Agent Sonny L. Villareal
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: May 3, 2021

Judge's signature

City and state: Riverside, California

Hon. Shashi H. Kewalramani, U.S. Magistrate Judge
Printed name and title

AUSA: John A. Balla (x6246)

**AFFIDAVIT**

I, Sonny L. Villareal, being duly sworn, declare and state as follows:

## I.  PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant against John RUNNELS for violations of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) (Possession of 50 grams or More of Methamphetamine with Intent to Distribute) and 18 U.S.C. § 924(c)(1)(B)(i) (Possession of a Short-Barreled Rifle in Furtherance of a Drug Trafficking Crime).

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF AFFIANT

3. I am a Special Agent ("SA") with the Department of Homeland Security, Immigration and Customs Enforcement/Homeland Security Investigations ("HSI") and have been since April 2016. I am presently assigned to the HSI Office of the Assistant Special Agent in Charge, San Bernardino, California, Gang Investigation Group.

4. Before becoming an HSI SA, I worked for the United States Customs and Border Protection as a Border Patrol Agent ("BPA") from December 2006 until April 2016. As a BPA, I primarily focused on investigating violations of the Immigration and Nationality Act, serving as a Canine Handler and an Intelligence Agent. I also had many overlapping responsibilities with my current role, as described in the following paragraphs in this Section.

5. As an HSI SA, I have received basic law enforcement training from the Federal Law Enforcement Training Center. Specifically, I have received training to enforce Titles 8, 18, 19, and 21 of the United States Code. I have received approximately 12 months of training and have investigative experience concerning drug identification and interdiction, gangs, weapon offenses, investigative techniques, evidence processing, immigration offenses, traffic enforcement, property crimes, personal crimes, interviewing and interrogation, dignitary protection, identify theft, fraud and forgery detection, false document detection, fugitive arrest operations, federal criminal prosecution, the Spanish language, drug and alcohol influence recognition, and general patrol officer techniques and tactics.

6. During my career as a law enforcement officer, I have initiated and participated in criminal investigations of individuals and organizations for violations of state and federal law. I interviewed numerous subjects and witnesses whose testimony has led to the arrest, indictment, and

conviction of individuals for violating state and federal law. I am familiar with the federal procedures involved in the execution of federal search warrants.

7. As noted, I am assigned to the Gang Investigation Group. Specifically, I am currently a member of the Riverside County Gang Impact Team ("GIT"), a multi-agency task force investigating violent criminal street gang activities in Riverside County, California. This task force is composed of sworn law enforcement personnel from HSI, Riverside County District Attorney's Office, the United States Border Patrol, the Beaumont Police Department, the Banning Police Department, Cathedral City Police Department, the Corona Police Department, the Desert Hot Springs Police Department, the Hemet Police Department, the Palm Springs Police Department, California Department of Corrections and Rehabilitation, Murrieta Police Department, the United States Marshall Service, and Immigration and Customs Enforcement.

### III. SUMMARY OF PROBABLE CAUSE

8. On March 15, 2021, an officer with the Hemet Police Department ("HPD"), in a marked vehicle, conducted a traffic stop on a Lexus for failure to stop at the posted stop sign and for having tinted front windows. The driver and sole occupant of the vehicle was RUNNELS. Record checks revealed that the vehicle was registered to RUNNELS and that RUNNELS had a criminal history that included felony convictions.

9. After smelling alcohol on RUNNELS and seeing an open bottle of alcohol in the vehicle, the officer asked RUNNELS to

step out of the car.  The officer then noticed a small baggy containing a white crystalline substance on the driver's side floor panel.  RUNNELS was then placed under arrest and the Lexus was towed.  Officers found a large amount of cash in RUNNELS's pocket.  During an inventory search of the Lexus, officers found a loaded short-barreled rifle and a cannister containing empty baggies and about 185 grams of methamphetamine.

### IV. STATEMENT OF PROBABLE CAUSE

**A.   Arrest of RUNNELS**

10.  I reviewed reports and photographs from HPD, and I learned the following:

   a.   On March 15, 2021, while on patrol in Hemet, California, an HPD officer stopped a Lexus ES350 for tinted front windows, a violation of California Vehicle Code Section 26708(a).

   b.   The officer approached the Lexus and contacted RUNNELS, the driver and sole occupant.  The officer smelled alcohol emitting from RUNNELS and saw a partially empty bottle of Hennessy liquor near the driver's seat and center console.  Based on these facts, the officer asked RUNNELS to step out of the vehicle to conduct field sobriety tests.

   c.   RUNNELS was uncooperative and began to reach toward the center console.  The officer was able to grab RUNNELS's left hand and prevent him from retrieving anything from the vehicle.  Eventually, RUNNELS stepped out of the vehicle, but he remained passively defiant and refused to follow commands.  The HPD officer attempted to conduct a pat down

search of RUNNELS person, but he continued to refuse commands and made his body rigid and stiff. Based on these facts, the officer did not feel it to be safe to conduct field sobriety tests, so he detained RUNNELS.

        d.    After detaining RUNNELS, the officer noticed a small baggy containing a white crystalline substance on the driver's side floor panel of the Lexus. Based on his training and experience, he believed the substance to be methamphetamine. The officer then placed RUNNELS under arrest and began the process to tow the Lexus.

        e.    The officer searched RUNNELS incident to arrest, and he found $445 in various denominations (1 x $100 bill; 13 x $20 bill; 3 x $10 bill; 10 x $5 bill; and 5 x $1 bill) in RUNNELS's front pants pocket.

        f.    During an inventory search of the Lexus, officers found the following.

            i.    A loaded Marlin Firearms .22 caliber rifle, Model 795, in between the driver's seat and door. A record check of the firearm revealed no prior record of sale. An examination of the rifle revealed it had been modified and the barrel of the rifle had been sawed off. The firearm was loaded with nine rounds of .22 caliber ammunition within the magazine, one round of .22 caliber ammunition in the chamber, and an additional one round of .22 caliber ammunition jammed in the extraction port.

            ii.    An iced tea concentrate cannister containing several empty baggies in the cannister. The cannister had a

hidden compartment in the base with five baggies collectively containing 185.5 grams of a substance that field-tested positive for methamphetamine, as well as baggies containing a small amount of substances that tested positive for crack cocaine and heroin.[1]

    11.    In my training and experience, I believe that RUNNELS intended to distribute the drugs found in his car and that he possessed the rifle in furtherance of his drug trafficking based on the following.

        a.    Typical methamphetamine users use about .1 gram of methamphetamine per day, and they often do not buy or carry more than a few doses on them at any given time. RUNNELLS possessed about 1,800 typical doses of methamphetamine, far more than a typical user would carry for personal use. Based on average street prices, the methamphetamine he possessed was worth approximately $3,700.

        b.    RUNNELS had a large amount of cash on his person in varying denominations. Carrying a large amount of cash, particularly in different small denominations, is typical of street-level drug dealers.

        c.    The cannister containing the drugs also contained empty baggies, and drug traffickers often carry empty baggies to divide and sell smaller quantities of their drugs.

        d.    RUNNELS carried a short-barreled rifle, and drug traffickers often possess firearms for protection. Drug

---

[1] I expect to receive the evidence from HPD soon, and, when I do, I plan to send the suspected methamphetamine to the DEA lab for analysis.

trafficking is a dangerous business because of the large amount of cash involved and because the drugs themselves are valuable. Thus, drug traffickers are often robbed, and they often feel that they cannot seek help from law enforcement because doing so would entail admitting to their own criminal activity. Drug traffickers therefore often possess firearms to protect themselves, their money, and their drugs.

  **B. Criminal History**

  12. I reviewed RUNNELS's certified conviction documents and learned that RUNNELS has the following prior felony conviction punishable by a term of imprisonment exceeding one year:

    a. On April 11, 2006, in case number SWF010687, in the Superior Court of the State of California, Riverside County, for a violation of California Health and Safety Code Section 11352(a), Transport or Sell a Controlled Substance.

  **C. Firearm Examination**

  13. On April 9, 2021, ATF SA Monica Lozano, who has special training in determining the manufacturing origin of firearms and ammunition, examined the firearm and ammunition seized from RUNNELS. SA Lozano determined that neither the firearm nor ammunition were manufactured in the State of California.

  14. She also determined that the rifle had a cut barrel with a length of approximately 9-3/10 inches and a stock cut to a pistol grip, giving the weapon an overall length of approximately 19 inches. Therefore, the weapon was a weapon

made from a rifle having a barrel less than 16 inches in length and an overall length of less than 26 inches, making it a "firearm" under the National Firearms Act, 26 U.S.C. § 5845, and a "short-barreled rifle" under 18 U.S.C. § 924(c)(1)(B)(i).

## IV. CONCLUSION

15. For all the reasons above, there is probable cause to believe that RUNNELS has committed violations of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) (Possession of 50 grams or More of Methamphetamine with Intent to Distribute) and 18 U.S.C. § 924(c)(1)(B)(i) (Possession of a Short-Barreled Rifle in Furtherance of a Drug Trafficking Crime).

Attested to by the applicant, HSI
SA Sonny L. Villareal, in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this _3rd_ day of
_May_____, 2021.

_____
UNITED STATES MAGISTRATE JUDGE

8